2023 IL App (1st) 231756B-U

No. 1-23-1756B

Second Division
December 1, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23 CR 2753 |
| JEREMIAH SMITH, | ) ) | Honorable Shelley Sutker-Dermer, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in revoking defendant's pretrial release under the SAFE-T Act where the State proved by clear and convincing evidence that no condition or combination of conditions would reasonably prevent him from obtaining additional felony or Class A misdemeanor charges.

¶ 2    Defendant Jeremiah Smith appeals from an order of the trial court revoking his pretrial release pursuant to the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act. See Pub. Acts 101-652, § 10-255; 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52

(lifting stay and setting effective date as September 18, 2023). Specifically, defendant argues that the trial court erred in determining that the State proved by clear and convincing evidence that there was no condition or combination of conditions that would reasonably prevent him from being charged with a subsequent felony or Class A misdemeanor while on pretrial release. Defendant also argues that the trial court erred by failing to articulate the specific reasons for this conclusion on the record. For the following reasons, we affirm the trial court's order.

¶ 3                                    I. BACKGROUND

¶ 4       On February 6, 2023, defendant was arrested for an unrelated domestic battery charge while at work at a Sweetgreen restaurant. During a custodial search incident to that arrest, police officers discovered multiple plastic bags of suspect crack cocaine in defendant's pocket. Consequently, defendant was charged in this case (number 23 CR 0275301) with one count of possession of a controlled substance (720 ILCS 570/402(c) (West 2022)) and one count of possession of a controlled substance with the intent to deliver (720 ILCS 570/401(c)(2) (West 2022)).

¶ 5       A D-Bond was initially set at $10,000. The bond was later reduced to $5000, which defendant paid on April 1, 2023. Defendant subsequently failed to appear for two court hearings, and, on August 9, 2023, a no bail warrant was issued.

¶ 6       On August 17, 2023, defendant appeared in court in Maywood, Illinois after being charged in a new case (number 23 CR 0875401) with armed robbery and aggravated kidnapping. The State filed a petition for a hearing on the violation of bail bond conditions (VOBB) based on the new offenses alleged in the Maywood case. The trial court executed a no bail warrant and defendant was held on VOBB.

¶ 7    Defendant's case was transferred to Skokie on August 18, 2023, where the State filed a substantively identical petition for a hearing on the VOBB. Defendant continued to be held on no bail.

¶ 8    On September 20, 2023, just two days after the SAFE-T Act became effective, defendant requested a review of the bond set in case number 23 CR 0875401. Because the SAFE-T had taken effect and a VOBB had been filed, the trial court characterized the proceeding as a revocation hearing under the SAFE-T Act. Both parties accepted this characterization.

¶ 9    In aggravation, the State claimed that defendant's criminal history included a felony violation of an order of protection, as well as a juvenile adjudication for aggravated unlawful use of a weapon.

¶ 10    The State further proffered the facts of the Maywood case as follows. On June 14, 2023, defendant approached the victim outside a convenience store and asked the victim if he was named "Dave." The victim replied that he was not Dave. The victim then entered the convenience store, where he had a brief conversation with a co-defendant Kirk. Kirk placed his arm around the victim and ushered him out of the store while defendant, who was wearing a mask, held the door for them.

¶ 11    The victim was forced into an SUV and driven away. Inside the SUV, defendant held the victim at gunpoint while Kirk took his wallet and cell phone. When the victim tried to reclaim his property, defendant pointed a gun at his chest and Kirk pointed a gun at his knee. At some point, defendant held the butt of his gun to the victim's head, ordered him to keep his head down, and demanded to know the victim's gang affiliation.

¶ 12    After about 20 minutes, the SUV parked in a forest preserve. Defendant and his co-defendants placed a pillowcase over the victim's head and discussed whether to kill him. They ultimately forced the victim out of the SUV, pushed him down a hill, and drove away.

¶ 13    The victim was able to walk home and call the police. The SUV was found the next day, and a facemask like the one allegedly worn by defendant was recovered from the floorboard. The victim also identified defendant as one of the perpetrators from a photo array.

¶ 14    In mitigation, defendant noted that he was 19 years old, the father of an infant daughter, and a caregiver for his grandmother with dementia. Defendant was also a senior at CCA Academy, employed as a certified culinary professional, and a lifelong resident of Cook County, save for two years when he lived in Mississippi. Defendant also personally claimed that he had an exculpatory affidavit from the victim, though the affidavit was never presented to the trial court. Defendant requested that he be placed on electronic monitoring.

¶ 15    After hearing from the parties, the court ruled:

> "I'm going to disregard the juvenile background. The pending armed robbery [and aggravated] kidnapping case *** is a violation of the bail bond that was set in this case which is a revocation. A request for a revocation.
>
> In reviewing it, the Court's going to find by clear and convincing evidence that no condition or combination of *** conditions *** would be reasonable to prevent the defendant from being charged with a subsequent felony or Class A misdemeanor. So it is hereby ordered the defendant [is] to remain detained in this case."

¶ 16    This appeal followed.

¶ 17                                II. ANALYSIS

¶ 18    Pretrial release in Illinois is now governed by the SAFE-T Act, as codified in article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)). Under the SAFE-T Act, "[a]ll persons charged with an offense shall be eligible for pretrial release before conviction." 725 ILCS 5/100-2(a) (West 2022). It is presumed that a defendant is entitled to release

if he complies with certain conditions, such as attending all required court proceedings and refraining from committing any criminal offenses. *Id.* Generally, a defendant will be denied pretrial release only if he is charged with a non-probationable offense and the State proves by clear and convincing evidence that he poses a real and present threat to the community. *Id.* § 2.

¶ 19 Of particular relevance here is section 110-6 of the Code, which controls the revocation of pretrial release. Section 110-6 provides that:

> "When a defendant has previously been granted pretrial release under this Section for a felony or Class A misdemeanor, that pretrial release may be revoked only if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release after a hearing on the court's own motion or upon the filing of a verified petition by the State." 725 ILCS 110-6(a) (West 2022).

At such a hearing, the defendant is entitled to the representation of counsel and an opportunity to be heard regarding the violation and the evidence in mitigation. *Id.* It is the State's burden to prove by clear and convincing evidence that "no condition or combination of conditions of release would reasonably ensure the appearance of the defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." *Id.* In deciding whether to revoke pretrial release, the trial court "shall consider all relevant circumstances, including, but not limited to, the nature and seriousness of the violation or criminal act alleged." *Id.*

¶ 20 On appeal, defendant first argues that the trial court erred by "failing to state the reasons for its revocation of pretrial release[.]" Defendant notes that the Code requires the trial court to consider "all relevant circumstances" when deciding whether to revoke pretrial release. According to defendant, "it is unclear whether the court made those considerations" because it did not articulate the reasons for its ruling. Thus, he requests that we vacate the court's revocation order

and find him eligible for release or, alternatively, remand for a new revocation hearing at which the court can more fully explain the basis for its ruling.

¶ 21    Defendant's argument is unpersuasive. First, he completely glosses over the fact that nothing in the language of section 110-6 requires the court to articulate the specific reasoning behind its ruling. Rather, the text of the statute requires only that the trial court *consider* all relevant circumstances in making its decision. 725 ILCS 5/110-6(a) (West 2022). Of course, the most reliable indicator of the meaning of a statute is its language, given its plain and ordinary meaning. *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11. Had the legislature intended to require trial courts to explain their reasoning on the record, it would have said so. See, *e.g.*, 725 ILCS 110-5(h) (West 2022) (providing that a court imposing electronic monitoring "shall set forth in the record the basis for its finding"); see also *Relf v. Shatayeva*, 2013 IL 114925, ¶ 34 ("Where the legislature has employed certain language in one part of a statute and different language in another, we may assume different meaning were intended[.]"). To the extent that defendant suggests that the court did not in fact consider all relevant circumstances, this argument ignores the long-established principle that the trial court is presumed to know and apply the law absent an affirmative indication to the contrary. *People v. Martinez*, 2021 IL App (1st) 172097, ¶ 56. As we see no such indication in the record, we reject defendant's argument.

¶ 22    Defendant next argues that the trial court erred in concluding that no condition or combination of conditions could reasonably prevent him from being charged with a subsequent felony or Class A misdemeanor.

¶ 23    Preliminarily, we note that the parties seem to agree that the standard of review is abuse of discretion, which occurs only where the court's decision is arbitrary, fanciful, or so unreasonable that no reasonable person would agree with it. *People v. Smith*, 2022 IL 127946, ¶ 25. In support,

the parties both cite *People v. Simmons*, 2019 IL App (1st), ¶¶ 1, 9, where this court reviewed the "virtually nonexistent" caselaw regarding the appeal of bail orders under Illinois Supreme Court Rule 604(c) (eff. July 1, 2017) and determined that such orders should be reviewed for abuse of discretion. To our knowledge, no appellate or supreme court decision has addressed the proper standard of review for the revocation of pretrial release under the SAFE-T Act. However, we need not necessarily decide the standard of review here, as we would not disturb the trial court's decision under any standard.

¶ 24 The record shows that while on bond in this case, defendant was arrested for the extremely serious charges of armed robbery and aggravated kidnapping. Although the motivation for those alleged offenses remains unclear from the record, the facts are egregious. According to the State's proffer, defendant and his co-defendants confronted the victim at a convenience store, forced him into a vehicle, and robbed him at gunpoint. They then drove the victim to a secluded area, covered his head with a pillowcase, and discussed murdering him before ultimately deciding to set him free. The victim identified defendant as one the offenders from a photo array and a mask similar to the one defendant allegedly wore was recovered from the vehicle the following day.

¶ 25 In response, defendant primarily emphasizes mitigating factors such as his employment, his educational efforts, and his role as a caretaker for his young child and ill grandmother. Defendant asserts that the court could have sufficiently minimized any threat he posed to the community by setting conditions on his release. However, none of the mitigating factors defendant relies upon prevented him from violating his bond in the present case by being arrested for serious felonies. Nor was the trial court required to elevate these mitigating factors above the seriousness of the violation. Accordingly, we cannot say that the trial court erred in revoking defendant's pretrial release under the facts of this case.

¶ 26                                    III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit court.

¶ 28    Affirmed.